**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 28, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**
–––––––––––––––––––––––––––

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff - Appellee, | |
| v. | No. 08-1478 |
| | (D. Colo.) |
| MICHAEL JAY SHIDLER, | (D.Ct. No. 1:04-CR-00354-REB-1) |
| Defendant - Appellant. | |

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and the appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). Therefore, this case is ordered submitted without oral argument.

Michael Jay Shidler was sentenced to 6 months imprisonment after the district court revoked his supervised release. He complains he was denied a

---

[*] This order and judgment is not binding precedent. 10th Cir. R. 32.1(A). Citation to orders and judgments is not prohibited. Fed. R. App. 32.1. But it is discouraged, except when related to law of the case, issue preclusion or claim preclusion. Any citation to an order and judgment must be accompanied by an appropriate parenthetical notation -- (unpublished). 10th Cir. R. 32.1(A).

revocation hearing and the sentence imposed is unreasonable.  We affirm.

## I. BACKGROUND

Shidler, a former Colorado attorney, pled guilty to Evasion of Payment of Tax and aiding and abetting the same in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 2.  The parties entered into a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure whereby the government agreed to recommend a sentence of 2 months imprisonment.  Although the advisory guideline range was 21 to 27 months imprisonment, the district court accepted the parties' agreement and sentenced Shidler to 2 months imprisonment and a 3-year term of supervised release, to include an 8 month period of home detention with electronic monitoring.  It also imposed a $22,000 fine to be paid during his supervised release term in monthly installments of at least $150.  Shidler's period of supervised release began on December 21, 2006.

On November 16, 2007, Shidler's probation officer filed a "Petition on Supervised Release" alleging six technical violations of Shidler's release conditions: (1) leaving the District of Colorado without the probation officer's or court's permission; (2) failing to make a payment on his fine for six months; (3) failing to timely report to his probation officer for six scheduled meetings; (4) failing to comply with the rules of electronic monitoring by returning to his residence late on five occasions; (5) failing to pay the costs of electronic monitoring; and (6) commingling personal and business funds.  He recommended

Shidler's supervised release be revoked and Shidler be sentenced to 6 months imprisonment.

On March 14, 2008, the court held a hearing on the petition to revoke supervised release. The following colloquy occurred between the court and defense counsel:

> THE COURT: . . . [A]re you authorized to state for the record whether Mr. Shidler admits or denies the allegations enumerated and made the focus of the instant petition?
>
> [DEFENSE COUNSEL]: I believe I am, your Honor.
>
> THE COURT: Very well.
>
> . . . .
>
> THE COURT: . . . As you know, there are six enumerated violations. May I have the defendant's position with respect to each or all of [them].
>
> [DEFENSE COUNSEL]: You Honor, we have reviewed the supervised violation report which was prepared by [the] probation officer . . . . We have reviewed it and discussed it, and it's my understanding that Mr. Shidler is agreeing to plead guilty to each of the violations alleged. And those are specifically violations 1 through 6 in the supervised release violation report.
>
> THE COURT: Very well. And thank you. I presume that the admissions of the defendant via counsel are sufficient for purposes of the government, vis-à-vis the instant petition. Is that correct . . . ?
>
> [GOVERNMENT COUNSEL]: That's correct, your Honor.
>
> THE COURT: Very well. I would therefore propose to now transform this hearing into a dispositional hearing.

(R. Vol. II at 4-5.)

As to the appropriate disposition, Shidler requested continuation of his supervised release. He also requested a four to six month continuation of the hearing during which time he would be monitored for compliance with his supervised release conditions. He claimed he was entitled to this relief because he had admitted his guilt and there existed mitigating circumstances, including the fact he was currently working as a tax return preparer, had made payments towards his fine, had appeared (albeit untimely) for his appointments with his probation officer, had since paid for his electronic monitoring and now had separate personal and business bank accounts.

The probation officer modified his initial recommendation of 6 months imprisonment, requesting instead that the hearing be continued for approximately four months during which time Shidler's compliance with his supervised release conditions would be closely monitored. If, at the end of the four month period, Shidler had fully complied with the conditions, the officer would withdraw the petition. The government did not oppose the officer's request. The court continued the hearing for four months, stating at that time it would either conduct a dispositional hearing based on Shidler's admissions or entertain a motion by the probation officer to withdraw the petition. The court warned:

> Mr. Shidler, make no mistake, I am not going to babysit you, and I am not going to require [the probation officer] to babysit you. Now, apparently you have had sufficient time to understand and comply

-4-

> with your conditions of supervised release. They don't involve
> rocket science. They don't involve extraordinary action or conduct
> on you either by way of commission or omission. Now, you will
> either get it right and keep it right, sir, over the next four months or
> bring your toothbrush. You will be going to prison. And I can't be
> any [plainer] than that. In the meantime, good luck to you.

(*Id.* at 12.)

Shidler failed to submit monthly supervision reports in August and September 2008 and to make monthly payments of his fine. Consequently, the parties reappeared for a dispositional hearing on December 8, 2008. Shidler's attorney argued the court should not revoke Shidler's supervised release. He claimed Shidler submitted the monthly reports when requested by his probation officer and the reason he failed to submit them on time was due to his Attention Deficit Disorder (ADD). He also said that although Shidler did not make a payment on his fine each month, the total amount of payments he made on his fine over the course of being on supervised release averaged $350 per month. Counsel sought home confinement so Shidler could continue to work.

Shidler also provided a statement under oath. He said he mailed the October supervision report on November 3 and he borrowed money to make a payment to his fine in November because he was sick and unable to work. He also said he made payments on the last day of June and July but they did not clear the bank until the next day so they appeared late. He claimed he took medication for both ADD and depression "but when [he is] under stress and pressure no

amount of medication is really going to be helpful." (R. Vol. III at 17.) He never intended not to comply with his supervised release conditions; "[t]here have just been problems that were beyond [his] control." (*Id.* at 18.) He also sought to explain charges made to his business account which appeared to be personal in nature. The court responded:

> What . . . I am not hearing [is] an apology to the court, I am not hearing any acceptance of responsibility for the violations that bring us to court today . . . . And I am not hearing any apologies to the court for the errors that have been made for which you have these many excuses. And Mr. Shidler, indeed, I am troubled by that. But if you need to complete the record, and item by item offer some type of business expense, I will let you on a brief basis.

(*Id.* at 20.)

> Shidler said:
>
> Um, I really hadn't intended, your Honor, to try to rebut what was claimed against me because it really doesn't get us [any]where.
> . . . .
>
> I didn't intend to violate these [conditions]. . . . And I have made my best effort . . . to comply . . . .
> . . . .
>
> I would just ask the court [to] give me the opportunity to pay off the fine, show that I can file the reports and comply with the requirements . . . of my probation and . . . work with my parole officers as they wish me to do so. That's all I want to do. It's what I thought I was doing. And to the extent that my conduct or behavior doesn't show that, I apologize to the court [as well as to the prosecutor and my probation officers]. I certainly don't want to blame my behavior on my medical condition [ADD and depression]. It certainly contributes to that . . . . I probably should have put mechanisms in place to help me prevent that. To help me be more consistent with what I was doing.

(*Id.* at 20-25.)

The probation officer recommended 6 months imprisonment and the government supported this recommendation. The government argued Shidler had received a significant reduction from the advisory guideline range at sentencing, had shown a blatant disregard for the conditions of his release and had already been given the opportunity to comply with the conditions of his supervised release and had failed to do so.

The court found Shidler, through counsel, had previously admitted to the six violations of his supervised release conditions and a factual basis existed for each, as well as for those violations occurring since the March hearing. The court noted the guideline range was 3 to 9 months imprisonment and the maximum term of additional supervised release was 3 years. It determined revocation of Shidler's supervised release was warranted under 18 U.S.C. § 3553(a)(1), (2) and was consistent with the pertinent policy statements of the United States Sentencing Commission. It determined a 6 month term of imprisonment, without the imposition of an additional term of supervised release, was appropriate. It explained:

> Since sentence was imposed in this case, everyone, except for [Shidler], has made extraordinary efforts. [The probation officer] has been extremely patient, indulgent, with Mr. Shidler.
>
> I am thinking back over my twenty years on the bench and conducting sentencing proceedings, revocation proceedings,

> dispositional proceedings, sentencing proceedings, and I don't have a memory of giving a person as many chances as the court has given Mr. Shidler in this case.
>
> That simultaneously is both a virtue and a fault. At the end of the proverbial day, Mr. Shidler complies when and how he chooses. Too many times [he] complies only when essentially forced to do so, either by his probation officer or by the court.
>
> I am struck in a negative way by a grown man with a law degree, a tax preparer, who cites as an excuse, not as an explanation, but as an excuse, his inability to attend to the minimum detail necessary to comply with the facile conditions of supervised release imposed on him in this case.
>
> . . . .
>
> And Mr. Shidler, for you to represent with a straight face to the court that you are unable to prepare the reports that are required of you in this case in a complete and on-time basis, I am sorry, sir, falls on deaf ears.
>
> . . . .
>
> At the time of sentencing, and again at the time of the initial hearing on this petition, some approximate nine months ago, Mr. Shidler, I warned you that nothing short of compliance with your conditions of supervision would spare the scenario before us today.
>
> However, all matters in mitigation, and there are some in mitigation, convince me that I should not impose a sentence, as I was initially inclined to do so, at the top or beyond the top of the advisory sentencing guideline range.

(*Id.* at 33-36.)

## II. DISCUSSION

Shidler says the district court violated his due process rights by denying him his right to a formal revocation hearing. He also asserts the court's

-8-

revocation of his supervised release and imposition of a 6 month sentence was unreasonable.[1]

A.  Revocation Hearing

Shidler claims the court erred in not holding a formal revocation hearing. He says he never validly waived his right to a hearing as the court failed to inform him of his rights under Rule 32.1 of the Federal Rules of Criminal Procedure and the consequences of a waiver of those rights.  The court also erred in finding he pled guilty to the violations because he did not personally enter a plea and his counsel's statement concerning his guilt was equivocal.  Indeed, when asked whether he had the authority to enter a guilty plea on Shidler's behalf, counsel stated only that he "believed" he was authorized to enter a guilty plea.

Because Shidler did not object to the lack of a formal revocation hearing in the district court, we review for plain error.  *See United States v. Fay*, 547 F.3d 1231, 1234 (10th Cir. 2008).  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the

---

[1] According to the government's brief, Shidler is projected to be released on August 8, 2009.  Therefore, he is still in prison and this case is not moot.  *See United States v. Meyers*, 200 F.3d 715, 721-22 (10th Cir. 2000) ("[W]hen a defendant appeals the revocation of his supervised release and resulting imprisonment and has completed that term of imprisonment, the potential impact of the revocation order and sentence on possible later sentencing proceedings does not constitute a sufficient collateral consequence to defeat mootness.").

fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (quotations omitted).

Rule 32.1(b)(2) of the Federal Rules of Criminal Procedure sets forth the rights of a defendant at a revocation hearing:

> Unless waived by the person, the court must hold the revocation hearing within a reasonable time in the district having jurisdiction. The person is entitled to:
>
> (A)   written notice of the alleged violation;
>
> (B)   disclosure of the evidence against the person;
>
> (C)   an opportunity to appear, present evidence, and question any adverse witness unless the court determines that the interest of justice does not require the witness to appear;
>
> (D)   notice of the person's right to retain counsel or to request that counsel be appointed if the person cannot obtain counsel; and
>
> (E)   an opportunity to make a statement and present any information in mitigation.

"Under [this rule], the defendant has the implicit right to admit his guilt or to contest the alleged violation of the terms of his supervised release. But, there is no requirement . . . that the court ascertain directly from the Defendant in open court whether he wanted to plead guilty to the allegations of supervised release violations." *Fay*, 547 F.3d at 1234 (citation and quotations omitted). When a defendant admits guilt, a full revocation hearing is not necessary. *Id.* Whether a defendant admitted guilt is determined by the totality of the circumstances. *See*

-10-

*id.* at 1235.

In *Fay*, the probation office filed a petition to revoke Fay's supervised release for violating the conditions of his release. At the revocation hearing, the district court found Fay had violated the conditions of his supervised release, revoked his supervised release and sentenced him to a term of imprisonment. On appeal, Fay claimed the court erred by not requiring him to admit his guilt at the revocation hearing. We concluded no plain error occurred because the totality of the circumstances demonstrated Fay had admitted to violating the conditions of his supervised release. *Id.* In his sentencing memorandum, he admitted to the facts contained in the Petition on Supervised Release. *Id.* at 1234. He also had pled guilty in state court to charges based on the same conduct. *Id.* at 1235. Prior to sentencing on the violation of supervised release, he alluded to his guilt, saying "Your honor, every day that I've been locked up I kick myself in the butt for what I did . . . . I have no excuse for what I did. I can't justify what I did." *Id.* (quotations omitted). Moreover, Fay did not object when his counsel told the district court at the revocation hearing there was no reason not to proceed to sentencing even though the government had not presented any evidence and Fay had not expressly admitted the violations in open court. *Id.*; see also *United States v. Farrell*, 393 F.3d 498, 500 (4th Cir. 2005) (concluding defendant had knowingly and voluntarily admitted to violating the conditions of her supervised release where defense counsel stated, in defendant's presence and without

-11-

objection, that defendant admitted to the alleged technical violations and where defendant apologized to the court and attempted to explain why she failed to comply with the conditions of her supervised release); *United States v. Tapia-Escalera*, 356 F.3d 181, 184 (1st Cir. 2004) (rejecting defendant's argument that he did not violate the conditions of his supervised release where the circumstances showed he understood the charges, there was ample evidence of the violations, and he had failed to object to his counsel informing the court he was not going to contest the allegations).

In this case, Shidler did not personally admit to violating the terms of his supervised release conditions in open court. However, the totality of the circumstances unequivocally demonstrates his tacit admission; he waived his right to a formal revocation hearing. Both Shidler and his attorney received the Petition on Supervised Release listing the alleged violations. At the revocation hearing, Shidler's attorney informed the court he "believe[d]" he had the authority "to state for the record whether Mr. Shidler admit[ted] or den[ied] the allegations" and then stated it was his understanding "Mr. Shidler [was] agreeing to plead guilty to each of the violations alleged." (R. Vol. II at 4-5.) Admittedly, counsel's statements were equivocal. The test, however, is the <u>totality</u> of the circumstances. And those circumstances reveal no objection by Shidler, a former attorney, to counsel's statements. Nor did he object to the court's subsequent statement that due to his admission it was transforming the revocation hearing

into a dispositional hearing.  Also, one of the reasons Shidler cited for claiming he was entitled to a continuance of the dispositional hearing was his admission of guilt.  Moreover, in his colloquy with the court at the dispositional hearing, Shidler admitted he submitted late reports and payments of his fine and "[he] didn't intend to violate" his supervised release conditions.  (R. Vol. III at 21.)

No plain error occurred.

B.  <u>Sentence</u>

Shidler claims revocation of his supervised release and imposition of a prison term were not necessary to deter further criminal conduct or to protect the public from further crimes under 18 U.S.C. § 3553(a)(2) (B), (C) because he had already served his sentence for his criminal conduct and had not committed any additional crimes.  He also argues that the alleged violations of the terms of his supervised release concerned his ability to timely perform them due to his ADD as opposed to not performing them at all and therefore summary revocation and imprisonment did not reasonably reflect the seriousness of the offense under § 3553.  Consequently, revocation and imprisonment do not advance the goals of 18 U.S.C. § 3582—correction and rehabilitation.  In sum, considering the nature of his violations and the other options available to the court, revocation and imprisonment were not reasonable.

When a defendant violates a condition of his supervised release, the district court may, as the court did here, revoke the term of supervised release and impose

-13-

prison time. 18 U.S.C. § 3583(e)(3). In imposing a sentence following revocation of supervised release, a sentencing court is required to consider both the policy statements contained in Chapter 7 of the sentencing guidelines, as well as a number of the factors set forth in 18 U.S.C. § 3553(a). *Id.*; *see also United States v. Cordova*, 461 F.3d 1184, 1188 (10th Cir. 2006). Those factors include:

> The nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to afford adequate deterrence, protect the public, and provide the defendant with needed educational or vocational training, medical care or other correctional treatment in the most effective manner; pertinent guidelines; pertinent policy statements; the need to avoid unwanted sentence disparities; and the need to provide restitution.

*Cordova*, 461 F.3d at 1188-89 (quotations omitted). "The sentencing court, however, is not required to consider individually each factor listed in § 3553(a), nor is it required to recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors that Congress has instructed it to consider before issuing a sentence." *Id.* (quotations omitted). We will overturn a sentence imposed as a result of a violation of supervised release only if it is "plainly unreasonable." *United States v. Kelley*, 359 F.3d 1302, 1304 (10th Cir. 2004) (quotations omitted).

Shidler's sentence is both procedurally and substantively reasonable. The district court arrived at Shidler's sentence after considering the policy statements of Chapter 7 and the relevant factors set forth in 18 U.S.C. § 3553(a). The court emphasized Shidler's history of noncompliance with the conditions of his

supervised release despite being given numerous opportunities to comply.  It also observed the need to sanction Shidler for the ongoing breach of trust resulting from his failure to comply with these conditions.  Moreover, the court noted it had initially sentenced Shidler to 2 months imprisonment, an "extraordinarily lenient and merciful" sentence—the bottom of the advisory guideline range was 21 months.  (*Id.* at 29.)  And, while the court was initially inclined to impose a sentence at the top of the advisory guideline range, it declined to do so in light of the mitigating factors.  The sentence suggests the court decided accountability, rather than repeated lenity, had become necessary.

Shidler was given the opportunity to avoid a lengthy term of imprisonment twice—first at his initial sentencing and then when the court allowed him a second chance to comply with the conditions of his supervised release.  As the court pointed out, those conditions were "not extraordinary" and very little was required of him to comply.  (*Id.* at 31.)  Nevertheless, Shidler failed.  Under these circumstances, a 6 month term of imprisonment is not plainly unreasonable.

**AFIRMED.**

                                      **Entered by the Court:**

                                      **Terrence L. O'Brien**
                                      United States Circuit Judge

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**
**OFFICE OF THE CLERK**

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

Elisabeth A. Shumaker                                                                                    Douglas E. Cressler
Clerk of Court                          July 28, 2009                                                   Chief Deputy Clerk


Mr. Jonathan Willett
1331 17th Street, Suite 608
Denver, CO 80202


**RE:      08-1478, United States v. Shidler**
         Dist/Ag docket: 1:04-CR-00354-REB-1

Dear Counsel:

Enclosed is a copy of the order and judgment.

Please contact this office if you have questions.

                                                        Sincerely,

                                                        *Elisabeth A. Shumaker*

                                                        Elisabeth A. Shumaker
                                                        Clerk of the Court



cc:     Kenneth M. Harmon
        John M. Hutchins


EAS/jm